**STATE of Missouri, Respondent,**

v.

**Richard D. HERRINGTON, Appellant.**

**No. WD 47803.**

Missouri Court of Appeals,
Western District.

Oct. 4, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 29, 1994.

Application to Transfer Denied
Jan. 24, 1995.

---

**4.** We added the emphasis.

Patrick D. Beeman, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P.J., and BRECKENRIDGE and SPINDEN, JJ.

PER CURIAM.

Richard D. Herrington was convicted by a jury of robbery in the first degree, section 569.020, RSMo 1986, and armed criminal action, section 571.015.1, RSMo 1986. Pursuant to these convictions, the court sentenced Herrington to consecutive terms of 30 and 10 years imprisonment, respectively. The court ordered the sentences to run consecutive to any other sentence imposed by any other jurisdiction. The court also found Herrington to be a "persistent offender," section 558.016, RSMo Cum.Supp.1993, and a "class X offender," section 558.019, RSMo Cum. Supp.1992. The judgment is affirmed as modified.

On July 27, 1992, at approximately 4:50 p.m., Gary L. Thurman, a Furr's Cafeteria manager, left Furr's to make the cafeteria's deposit of $14,000 in cash and $1,000 in checks at Boatmen's Bank. Thurman carried the deposit in a Furr's bag. As Thurman was walking toward his car, Richard Herrington, a former employee, pulled out of a parking spot and slowly drove to where Thurman's car was parked. Thurman immediately recognized Herrington and his car, a white Ford Escort.

While still in his car, Herrington and Thurman exchanged greetings. Herrington then said to Thurman, "I need a favor from you." Thurman responded, "What do you need?" Herrington stepped out of his car and pulled out a gun and stuck it in Thurman's midsec-

tion. Herrington said, "You can throw those bags in my car," referring to the Furr's deposit. Thurman attempted to talk Herrington out of it, but Herrington said, "Gary, I'll cap you. I'll cap you." Herrington jerked the gun "back up like he was really going to do it." Thurman then threw the bag in the car.

Herrington then said to Thurman, "Give me your keys." Thurman again attempted to talk Herrington out of it, but Herrington repeated, "Give me the keys," adding, "Gary, I'll blow your ... head off with this." Thurman threw the keys on the ground and Herrington lunged at him as if he was going kill him. Herrington then reached down and picked up the keys and said "Now, if you want to live, you better run your ass in the cafeteria." Herrington kept the gun trained on Thurman and Thurman ran into the cafeteria. Herrington then drove off.

On August 5, 1992, Herrington was arrested by Sergeant Jeffrey D. Clark, a Junction City, Kansas, police officer, after he spotted Herrington in a car partially parked in an alley and on a driveway access behind some businesses at 6th and Adams in Junction City.

When Sergeant Clark approached the driver's side of the vehicle, he observed Herrington sitting on the driver's side of the car, but slumped over toward the passenger's side of the vehicle. Herrington was either sleeping or unconscious. After Sergeant Clark knocked on the window several times, Herrington sat up, and appeared to be dazed. Herrington started up his vehicle, and Sergeant Clark advised him to shut off the engine. Ultimately, Sergeant Clark opened up the driver's side door and observed a loaded handgun in a compartment on the driver's side door. At trial, Thurman identified this handgun, marked as State's Exhibit No. 10, as the gun that Herrington used in the robbery.

In his only point of appeal, Herrington asserts that the trial court abused its discretion in admitting into evidence the testimony of Sergeant Clark, who testified that nine days after the robbery he recovered a loaded handgun, State's Exhibit No. 10, from the driver's side door compartment of the car in

which Herrington was reclining at 2:36 in morning.[1] Specifically, Herrington claims that Sergeant Clark's testimony constituted evidence of a separate and distinct crime and that the probative value of this testimony was outweighed by its prejudicial effect, especially because Herrington agreed to stipulate that the officer had found a gun in his possession.

 In general, evidence of "prior crimes"[2] is not admissible unless the evidence has a "legitimate tendency to establish defendant's guilt of the crime charged.". State v. Kenley, 693 S.W.2d 79, 81 (Mo. banc 1985). If the evidence tends to establish intent, motive, absence of mistake or accident, a common scheme or plan, or the identity of the person charged with the commission of the crime, it is admissible when the probative value of the evidence outweighs its prejudice. State v. Sladek, 835 S.W.2d 308, 311 (Mo. banc 1992). The trial court is in the best position to evaluate whether the potential prejudice of the evidence outweighs its relevance. State v. Kenley, 693 S.W.2d at 81.

 The trial court did not err in admitting Sergeant Clark's testimony. The testimony of Sergeant Clark was relevant to establish the identity of the accused as well as the availability to Herrington of a means of committing the crime in the manner reported by the victim. State v. Green, 674 S.W.2d 615, 620 (Mo.App.1984). As mentioned above, Thurman identified this handgun as the gun used by Herrington in the robbery. Proof of "prior crimes" is competent to prove the crime charged if it tends to prove the identity of the person charged with the commission of that crime. State v. Rhodes, 869 S.W.2d 797, 799 (Mo.App.1994). Therefore, this evidence was relevant to establish Herrington committed the offenses of robbery in the first degree and armed criminal action as charged.

 Herrington also argues that the trial court erred in admitting Sergeant Clark's testimony because he was willing to stipulate that Sergeant Clark found a handgun in his possession. However, "the right of the state to offer and to have received evidence which is relevant and material cannot be taken away by an offer for stipulation." State v. Clemons, 643 S.W.2d 803, 805 (Mo. banc 1983) (quoting State v. Holmes, 609 S.W.2d 132, 135 (Mo. banc 1980)). Since the State has the burden of proving the defendant's guilt beyond a reasonable doubt, it should not be unduly limited as to the manner of satisfying this quantum of proof. State v. Clemons, 643 S.W.2d at 805.

Point denied.

The State directs this court's attention to a discrepancy that exists between the trial court's findings and its typewritten judgment. Although the typewritten "Judgment and Sentence" states that Herrington was sentenced as a "class X offender," it omits any reference to the court's finding that Herrington was a "persistent offender." The State's evidence established that Herrington was a "persistent offender" with at least five criminal felony violations. The trial court correctly found that Herrington was a "persistent offender." This court will enter the judgment that the trial court should have entered. Rule 30.23; State v. Williams, 797 S.W.2d 734, 738 (Mo.App.1990).

The judgment and sentence in State v. Richard D. Herrington, Case No. CR192–215F, Clay County Circuit Court, is correct-

1. Herrington also asserts error in the trial court's denial of his pre-trial motion to suppress evidence. However, a trial court's pre-trial ruling on a motion to suppress evidence is interlocutory and not appealable. State v. Henderson, 826 S.W.2d 371, 374 (Mo.App.1992); State v. Collins, 816 S.W.2d 257, 258 (Mo.App.1991). This court reviews the objection made at trial. State v. Henderson, 826 S.W.2d at 374.

2. This court uses the term "prior crimes" to refer to the type of evidence to be considered under the issue discussed herein. "Although the uncharged crime usually occurs prior to the crime being tried, this is not a requirement and the same type issues can arise concerning the admissibility of a subsequent crime. In addition, although the term 'crime' is used, neither a prior conviction nor a charge is required; the principles clearly cover any wrongdoing that could have been the subject of a criminal charge and probably covers other wrongful acts and conduct to the extent that it conveys to the jury the type of prejudice that accompanies a disclosure that the defendant has engaged in criminal conduct." State v. Sladek, 835 S.W.2d 308, 313 n. 1 (Mo. banc 1992) (Thomas, J. concurring).

ed by ordering the typewritten sentence and judgment to reflect that Herrington was "persistent offender," as well as a "class X offender." In all other respects, the judgment is affirmed.

All concur.