

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | *Opinion issued April 30, 2024* |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. SC100212 |
| | ) | |
| ASHLEY COLVILLE, | ) | |
| | ) | |
| Respondent. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS
The Honorable David A. Roither, Judge

Ashley Colville was charged with one count of second-degree involuntary manslaughter in violation of section 565.027.[1]  On Colville's motion, the circuit court dismissed the indictment with prejudice.  The state appeals, and, because the indictment was sufficient, the circuit court's judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.

### Factual and Procedural Background

On September 27, 2021, Colville and Rodney Larue were involved in a motor vehicle accident at the intersection of Arsenal Street and Ivanhoe Avenue in St. Louis.

---

[1]  All references to section 565.027 are to RSMo Supp. 2017.  All other statutory references are to RSMo 2016 unless otherwise noted.

Larue was injured when his moped collided with Colville's vehicle, and he later died from his injuries. In April 2022, a grand jury indicted Colville on one count of second-degree involuntary manslaughter. In June 2022, Colville filed a Rule 24.04(b) motion to dismiss the indictment as insufficient because it failed to state the offense charged. The indictment stated:

> The defendant, in violation of section 565.027, RSMo, committed the class E felony of involuntary manslaughter in the second degree, punishable upon conviction under Sections 558.011 and 558.002, RSMo, in that on or about September 27, 2021, in the City of St. Louis, State of Missouri, the defendant caused the death of Rodney Larue by colliding with a motor vehicle operated by the victim and did so with criminal negligence in that the defendant failed to yield to the victim and failed to use a turn signal.

After briefing and argument on the motion, the circuit court dismissed the indictment with prejudice. In its order sustaining the motion to dismiss, the circuit court noted it reviewed several exhibits, including a video surveillance recording of the accident. The circuit court then held Colville's alleged failure to yield and signal did not amount to criminal negligence, an essential element of second-degree involuntary manslaughter. Specifically, the circuit court stated:

> Having reviewed the video the Court cannot in good conscience say the defendant committed actions that rise to the level of a "gross deviation" such that she could legally be found criminally negligent in this instance, especially in the context of the other vehicles around her contemporaneously making the same actions or non-actions that she made or failed to make.

2

The state appealed pursuant to section 547.200.2,[2] and this Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution.

**Standard of Review**

When the motion to dismiss challenges the sufficiency of the indictment, it is a question of law and review is *de novo*. *State v. Anderson*, 232 S.W.2d 909, 912 (Mo. 1950). A charging document is sufficient if it "alleges the essential elements of the offense and clearly apprises the defendant of the facts constituting the offense." *State v. Rohra*, 545 S.W.3d 344, 347 (Mo. banc 2018). Not only is a motion to dismiss an indictment not an opportunity to decide if the state will be able to prove the facts alleged, but the circuit court is also prohibited from considering any evidence or finding any facts. Instead, to determine the sufficiency of an indictment or information, a court must "look at it from its four corners, and in its entirety." *State v. Barker*, 490 S.W.2d 263, 270 (Mo. App. 1973); *see also State v. Linders*, 253 S.W. 716, 719 (Mo. 1923) (limiting sufficiency review of an indictment to its four corners).

---

[2] Section 547.200.2 provides the state may appeal "in the cases and under the circumstances mentioned in section 547.210 and in all other criminal cases except in those cases where the possible outcome of such an appeal would result in double jeopardy to the defendant." *See also* § 547.210 (noting "[w]hen any indictment or information is adjudged insufficient upon demurrer or exception … the court may, in its discretion, grant an appeal"); *State v. Brooks*, 372 S.W.2d 83, 85 (Mo. 1963) (citing both statutes and noting the state has the right to appeal when an "indictment or information has been adjudged insufficient because of defects or insufficiencies in the indictment or information itself"). Here, double jeopardy has not attached, and the state properly exercised its right to appeal.

3

**Analysis**

Historically, courts conducted fact-intensive reviews of indictments, such that "even the slightest technical defect might fell an indictment." *United States v. Wydermyer*, 51 F.3d 319, 324 (2d Cir. 1995); *see also* William Blackstone, *Commentaries on the Laws of England, Book the Fourth* 1700-03 (Lewis's ed. 1900) (reciting the traditional requirements of an indictment at English common law).[3] Today, "[w]e no longer treat indictments and informations as magical incantations that permit defendants to escape if the verbal charms are uttered improperly." *State v. Isa*, 850 S.W.2d 876, 887 (Mo. banc 1993).

Accordingly, a circuit court's review of an indictment at the motion to dismiss stage is limited to determining whether the indictment complies with the constitutional guarantee set out in the Sixth Amendment of the United States Constitution and article I,

---

[3] "Strict technical rules of pleading were developed under the common law due in large part to the fact that all felonies were punishable by death and accompanied by the collateral consequences of attainder, forfeiture of property, and corruption of blood." *State v. Parkhurst*, 845 S.W.2d 31, 33 (Mo. banc 1992) (citing *State v. Stringer*, 211 S.W.2d 925, 928 (Mo. 1948)). However, "[t]he justifications for such complicated rules largely disappeared with the establishment of substantive criminal codes and well-settled burdens of proof." 1 *Wharton's Criminal Procedure* § 5:1 (14th ed. 2017). The dissipation of these justifications led the General Assembly to relax hyper-technical pleading requirements preventing the consideration of indictments on mere technicalities. *See, e.g.*, § 3945, RSMo 1939 ("Statute of Jeofails") (removing several historical bases for rendering an indictment insufficient). Additionally, in 1952, this Court adopted several rules of criminal procedure aimed at altering the essence and substance of an indictment. *See* Rule 24.01 (1953) (noting "[t]he indictment or information shall be a plain, concise, and definite statement of the essential facts constituting the offense charged"); Rule 24.11 (1953) (mirroring § 545.030). These changes permitted judges around the state "to use common sense rather than focus exclusively on technicalities when evaluating the adequacy of pleading documents." *Wharton's Criminal Procedure*, *supra*, at § 5:2.

section 18(a) of the Missouri Constitution, i.e., a defendant shall be informed of "the nature and cause of the accusation." "This constitutional guarantee … assures that defendants will have notice of the charge, be able to prepare a defense, and avoid double jeopardy." *Isa*, 850 S.W.2d at 887 (citing *State v. Borders*, 199 S.W. 180, 182 (Mo. 1917)). So long as the indictment puts the defendant on "notice of the criminal nature and factual foundation of the crime charged" – thereby complying with these constitutional guarantees – it should be adjudged sufficient. *Id.* This Court has said an indictment is sufficient so long as it "contains all essential elements of the offense as set out in the statute [creating the offense] and clearly apprises [the] defendant of [the] facts constituting the offense." *State v. O'Connell*, 726 S.W.2d 742, 746 (Mo. banc 1987) (alteration omitted) (internal quotations omitted).[4]

Here, the state argues the circuit court failed to properly limit its review of the indictment.[5] This Court agrees. To resolve Colville's motion, the circuit court did not

---

[4]  Rule 23.01(b) mirrors these essential requirements by requiring a charging document to state: (1) "the name of the defendant"; (2) "the essential facts constituting elements of the offense charged"; (3) "the date and place of the offense"; (4) "the statute alleged to have been violated and the statutes that fix the penalty or punishment therefor"; and (5) "the name and degree … of the offense charged." Rule 23.01(b) also states that "[a]ll indictments … that are substantially consistent with the forms of indictments … that have been approved by this Court shall be deemed to comply with the requirements of this Rule[.]" Here, the indictment was substantially consistent with MACH-CR 2d 14.12 and complied with all the requirements of Rule 23.01(b).

[5]  Colville argues the state's claim is reviewable only for plain error because the state's argument on appeal is different than the argument the prosecutor presented at the hearing on the motion to dismiss. This is incorrect. The prosecutor contested the motion by arguing the indictment was sufficient because it contained the essential elements of the offense charged—the same argument the state makes here. Assuming, *arguendo*, plain error review applies, relief is still warranted because the circuit court's decision to act as

need to decide whether the allegations could be proven or whether actions alleged constituted criminal negligence. In fact, the circuit court was prohibited from doing so at this stage in the prosecution. Instead, the circuit court was required to limit its review to the face of the indictment and to resolve only the following two questions: (1) whether the indictment contains the essential elements of involuntary manslaughter in the second degree, and (2) whether the indictment apprised Colville of facts constituting that charge. The indictment was sufficient in both respects.

"A person commits the offense of involuntary manslaughter in the second degree if he or she acts with criminal negligence to cause the death of any person." § 565.027. Section 562.016.5 states that a person acts with criminal negligence "when he or she fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in that situation." Here, the indictment plainly sets out the essential elements of second-degree involuntary manslaughter and apprised Colville of facts constituting the offense. The indictment alleged Colville: (1) caused the death of Larue by colliding with his motor vehicle; and (2) acted with criminal negligence to

---

the finder of fact on the motion to dismiss and deprive the state of its right to try Colville was: (1) an "evident, obvious, and clear" error; (2) affecting a substantial right of the state; and (3) resulting in a miscarriage of justice. Rule 30.20; *see also State v. Brandolese*, 601 S.W.3d 519, 531 (Mo. banc 2020) (reciting this Court's plain error review framework).

cause Larue's death by failing to yield and signal.[6] The indictment was sufficient, and

the circuit court erred, plainly or otherwise, in sustaining Colville's motion to dismiss.[7]

---

[6] Colville argues the allegations of failing to yield and signal, without more, are insufficient to establish criminal negligence. "The trial is the first opportunity afforded the [s]tate to present its evidence." *State v. Aston*, 434 S.W.3d 530, 534 (Mo. App. 2014) (internal quotations omitted). It follows that, whether the state has satisfied its burden in proving Colville committed the offense charged – including whether her acts show she failed to be aware of a substantial and unjustifiable risk and that failure constituted a gross deviation from the standard of care – "is not capable of determination without a trial." *Id.* (internal quotations omitted). There will be a time to argue whether the state's developed facts do, indeed, constitute criminal negligence, but not at this stage in the prosecution. *See, e.g.*, *State v. Morovitz*, 867 S.W.2d 506, 508 (Mo. banc 1993) (noting the circuit court may direct a verdict of acquittal when there is insufficient evidence "from which reasonable persons could have found defendant guilty as charged").

[7] The circuit court also erred when it relied on *State v. Metzinger*, 456 S.W.3d 84 (Mo. App. 2015), to justify looking outside the four corners of the indictment to resolve this motion to dismiss. In *Metzinger*, the defendant was charged via information with making a terroristic threat in violation of section 574.115, RSMo Supp. 2014. *Id.* at 87-88. The defendant moved to dismiss the information on the ground that his tweets were constitutionally protected speech and not true threats. *Id.* at 88-89. The circuit court reviewed the tweets, found they did not contain true threats and, therefore, dismissed the information. *Id.* at 89. The court of appeals affirmed, noting the circuit court's consideration of the tweets was appropriate because the question of whether the tweets were constitutionally protected speech (and, therefore, barred prosecution altogether) was a threshold question of law to be decided prior to trial. *Id.* at 94. Unlike in *Metzinger*, Colville raised no threshold constitutional defense the circuit court was required to decide before the prosecution could continue. *Metzinger* does not apply to the present case and, to the extent it suggests a circuit court always may consider evidence outside the charging document on a motion to dismiss, it should no longer be followed.

**Conclusion**

For the reasons set forth above, the circuit court erred in dismissing the indictment because it was sufficient in all required respects. Accordingly, the judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.

_____
Paul C. Wilson, Judge

Russell, C.J., Powell, Fischer, Ransom, and
Gooch, JJ., and Borthwick, Sp. J., concur.
Broniec, J., not participating.